1

2

3

4

5

6

7

8                     United States District Court

9                    Eastern District of California

10

11

12   Nyles Lawayne Watson,

13           Plaintiff,                    No. Civ. S 02-1777 DFL PAN P

14       vs.                               Findings and Recommendations

15   State of California, et al.,

16           Defendants.

17                                -oOo-

18       Plaintiff is a state prisoner without counsel litigating a

19   civil rights action against prison officials.

20       The case proceeds on the January 14, 2003, third amended

21   complaint against defendants Pliler, Johnson, Wai and Kofoed.

22       Plaintiff claims that while confined at California State

23   Prison Sacramento (CSP--Sacramento) he was injured when a staple

24   gun fell on his wrist.  He claims defendant Dr. Johnson

25   misdiagnosed the injury for many months, defendant Nurse Wai

26   repeatedly rejected plaintiff's requests to see a doctor and

1  defendant Warden Pliler knew of the injury and gross negligence

2  of her medical staff and failed to remedy them.  Plaintiff claims

3  that at California State Prison Solano (CSP--Solano)defendant Dr.

4  Kofoed eventually operated on the wrist but failed to prescribe

5  physical therapy and that as a result plaintiff lost some of the

6  mobility in his wrist.

7      Wai, Pliler and Kofoed moved February 23, 2005, for summary

8  judgment.  Plaintiff opposed.

9      Standard on Summary Judgment

10     A party may move, without or without supporting affidavits,

11 for a summary judgment and the judgment sought shall be rendered

12 forthwith if the pleadings, depositions, answers to

13 interrogatories, and admissions on file, together with the

14 affidavits, if any, show that there is no genuine issue as to any

15 material fact and that the moving party is entitled to a judgment

16 as a matter of law.  Fed. R. Civ. P. 56(a)-(c).

17     An issue is "genuine" if the evidence is such that a

18 reasonable jury could return a verdict for the opposing party.

19 Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  A fact is

20 "material" if it affects the right to recover under applicable

21 substantive law.  Id.  The moving party must submit evidence that

22 establishes the existence of an element essential to that party's

23 case and on which that party will bear the burden of proof at

24 trial.  Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

25 The moving party "always bears the initial responsibility of

26 informing the district court of the basis for its motion and

1   identifying those portions of 'the pleadings, depositions,

2   answers to interrogatories, and admissions on file, together with

3   the affidavits, if any'" that the moving party believes

4   demonstrate the absence of a genuine issue of material fact.

5   Id., at 323.  If the movant does not bear the burden of proof on

6   an issue, the movant need only point to the absence of evidence

7   to support the opponent's burden.  To avoid summary judgment on

8   an issue upon which the opponent bears the burden of proof, the

9   opponent must "go beyond the pleadings and by her own affidavits,

10  or by the "'depositions, answers to interrogatories, and

11  admissions on file,' designate 'specific facts showing that there

12  is a genuine issue for trial.'"  Id., at 324.  The opponent's

13  affirmative evidence must be sufficiently probative that a jury

14  reasonably could decide the issue in favor of the opponent.

15  Matsushita Electric Industrial Co., Inc. v. Zenith Radio

16  Corporation, 475 U.S. 574, 588 (1986).  When the conduct alleged

17  is implausible, stronger evidence than otherwise required must be

18  presented to defeat summary judgment. Id., at 587.

19      Fed. R. Civ. P. 56(e) provides that "supporting and opposing

20  affidavits shall be made on personal knowledge, shall set forth

21  such facts as would be admissible in evidence, and shall show

22  affirmatively that the affiant is competent to testify to the

23  matters stated therein."  Nevertheless, the Supreme Court has

24  held that the opponent need not produce evidence in a form that

25  would be admissible at trial in order to avoid summary judgment.

26  Celotex, 477 U.S. at 324.  Rather, the questions are (1) whether

1   the evidence could be submitted in admissible form and (2) "if

2   reduced to admissible evidence" would it be sufficient to carry

3   the party's burden at trial.  Id., at 327.  Thus, in Fraser v.

4   Goodale, 342 F.3d 1032 (9th Cir. 2003), objection to the opposing

5   party's reliance upon her diary upon the ground it was hearsay

6   was overruled because the party could testify to all the relevant

7   portions from personal knowledge or read it into evidence as

8   recorded recollection.

9       A verified complaint based on personal knowledge setting

10  forth specific facts admissible in evidence is treated as an

11  affidavit.  Schroeder v. McDonald, 55 F.3d 454 (9th Cir. 1995);

12  McElyea v. Babbitt, 833 F.2d 196 (9th Cir. 1987).  A verified

13  motion based on personal knowledge in opposition to a summary

14  judgment motion setting forth facts that would be admissible in

15  evidence also functions as an affidavit.  Johnson v. Meltzer, 134

16  F.,3d 1393 (9th Cir. 1998); Jones v. Blanas, 393 F.3d 918 (9th

17  Cir. 2004).  Defects in opposing affidavits may be waived if no

18  motion to strike or other objection is made.  Scharf v. United

19  States Attorney General, 597 F.2d 1240 (9th Cir. 1979)

20  (incompetent medical evidence).

21  Undisputed Facts

22      November 16, 2000, at CSP--Sacramento, plaintiff injured his

23  left wrist when a staple gun fell on it.  Defendant Wai, a nurse,

24  examined the wrist and determined it was bruised and swollen but

25  that plaintiff could bend and move it.  Wai prescribed ice, an

26  ace bandage, Motrin, and told plaintiff to return to the clinic

as needed.

November 29, 2000, plaintiff returned to the medical clinic with complaints his left wrist hurt and requested an x-ray. Defendant Dr. Johnson examined him and diagnosed wrist trauma a few weeks prior. Dr. Johnson noted in the medical file that it was "OK to wait" on any further treatment. Plaintiff received pain medication.

Plaintiff transferred from CSP--Sacramento December 14, 2000, to attend court in San Joaquin County. He was confined at the county jail until July 2, 2001, when he returned to CSP--Sacramento. Jail medical staff informed plaintiff June 21, 2001, he had a benign ganglion cyst on his left wrist.

August 7, 2001, plaintiff was scheduled to see a doctor for treatment. August 8, 2001, Ibuprofen was prescribed for 30 days. August 22, 2001, plaintiff submitted a grievance complaining about his medical treatment at CSP--Sacramento and requested an investigation by the warden.

August 31, 2001, Dr. Penner examined plaintiff at CSP--Sacramento for complaints of wrist pain. Dr. Penner noted mild swelling but no inflammation. He considered rupturing the ganglion cyst but concluded surgical intervention was not required and prescribed pain medication.

September 5, 2001, plaintiff again saw a doctor, complaining of the ganglion cyst on his wrist.

September 14, 2001, plaintiff again saw a doctor who noted the cyst was slowly increasing in size. The doctor diagnosed a

1   ganglion cyst and aspirated it by inserting a needle and drawing

2   out fluid.

3       September 25, 2001, an x-ray and surgical consultation were

4   ordered.

5       October 2, 2001, plaintiff was transferred to CSP--Solano.

6   He continued to complain of pain and a lump in his left wrist.

7       At CSP--Solano Dr. Kofoed, an orthopedic surgeon, first

8   examined plaintiff in November 2001.  Dr. Kofoed diagnosed a

9   ganglion cyst which other physicians had been treating

10  conservatively.   Kofoed performed the surgery April 23, 2002.

11  Afterward, Dr. Kofoed gave plaintiff a brace to immobilize the

12  wrist and ordered a 29-day "lay-in" to allow the wound to heal

13  and plaintiff to recover from surgery.  Kofoed specifically

14  considered the risk of harm from physical therapy and decided

15  against it.

16  <u>Analysis</u>

17      "The unnecessary and wanton infliction of pain upon

18  incarcerated individuals under color of law constitutes a

19  violation of the Eighth Amendment . . . ."  <u>McGuckin v. Smith</u>, 974

20  F.2d 1050, 1059 (9th Cir. 1991).  A violation of the Eighth

21  Amendment occurs when prison officials deliberately are

22  indifferent to a prisoner's medical needs.  <u>Id.</u>  The threshold

23  for a medical claim under the Eighth Amendment is extremely high:

24      A prison official acts with "deliberate indifference .
        . . only if [he] knows of and disregards an excessive
25      risk to inmate health and safety."  <u>Gibson v. County of</u>
        <u>Washoe, Nevada</u>, 290 F.3d 1175, 1187 (9th Cir. 2002)
26      (citation and internal quotation marks omitted).  Under

1       this standard, the prison official must not only "be
2       aware of facts from which the inference could be drawn
         that a substantial risk of serious harm exists," but
3       that person "must also draw the inference." <u>Farmer v.</u>
         <u>Brennan</u>, 511 U.S. 825, 837 (1994).  "If a [prison
4       official] should have been aware of the risk, but was
         not, then the [official] has not violated the Eighth
5       Amendment, no matter how severe the risk."  <u>Gibson</u>, 290
         F.3d at 1188 (citation omitted).  This "subjective
6       approach" focuses only "on what a defendant's mental
         attitude actually was."  <u>Farmer</u>, 511 U.S. at 839.
7       "Mere negligence in diagnosing or treating a medical
         condition, without more, does not violate a prisoner's
8       Eighth Amendment rights.  <u>McGuckin</u>, 974 F.2d at 1059
         (alteration and citation omitted).

9  <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1057 (9th Cir. 2004) (footnote

10  omitted).

11       A "serious" medical need exists if the failure to treat a

12  prisoner's condition could result in further significant injury

13  or the "unnecessary and wanton infliction of pain." <u>Id.</u> (citing

14  <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)).  A prisoner has a

15  "serious" need for medical treatment if she has an injury that a

16  reasonable doctor or patient would find important and worthy of

17  comment or treatment, a medical condition that significantly

18  affects her daily activities, or chronic and substantial pain.

19  <u>Id.</u> at 1059-60 (citing <u>Wood v. Housewright</u>, 900 F.2d 1332, 1337-

20  41 (9th Cir.1990)).

21       Delay in medical treatment amounts to deliberate

22  indifference if (1) it seriously affected the plaintiff's medical

23  condition and (2) defendants were aware the delay would cause

24  serious harm.  <u>Shapley v. Nevada Board of State Prison</u>

25  <u>Commissioners</u>, 766 F.2d 404, 408 (9th Cir. 1985).

26       In seeking summary judgment, Dr. Kofoed, Nurse Wai and

1   Warden Pliler submit evidence that a ganglion cyst is not a

2   medical condition requiring urgent care, nor is it serious or

3   life-threatening.  Dr. Kofoed submits evidence that physical

4   therapy is not medically appropriate following surgery to remove

5   a ganglion cyst.

6       In opposition, plaintiff submits evidence he still was

7   wearing a wrist brace on March 22, 2005.  Plaintiff testified at

8   his deposition that he continues to suffer pain and decreased

9   mobility in his wrist and he is substantially restricted in his

10  ability to lift objects.

11      The court assumes without deciding the ganglion cyst on

12  plaintiff's left wrist amounted to a serious medical condition.

13  Even so, plaintiff has established negligence, at most, in

14  treatment for his medical needs.  "Mere negligence in diagnosing

15  or treating a medical condition, without more, does not violate a

16  prisoner's Eighth Amendment rights."  McGuckin, 974 F.2d at 1059

17  (alteration and citation omitted).  Plaintiff submits nothing but

18  his lay opinion that treatment for his ganglion cyst was

19  inappropriate.  Dr. Kofoed performed surgery but did not

20  prescribe physical therapy because he believed it was not

21  medically appropriate.  Neither Nurse Wai nor Dr. Kofoed were

22  deliberately indifferent to plaintiff's serious medical needs.

23  When plaintiff left CSP--Sacramento in December 2001, his

24  condition was unremarkable.  Between July 2 and November 2001,

25  plaintiff received regular care for the wrist including pain

26  medicine, aspiration, and referral to an orthopedic specialist.

1  Only nine months transpired between the time officials at CSP--

2  Sacramento knew the cyst had developed and surgically removal.

3  There is nothing to support a conclusion plaintiff's condition

4  was aggravated by this nine-month delay.

5      Warden Pliler declares she was not at CSP--Sacramento from

6  January through August of 2002 and first learned of plaintiff's

7  claims in the course of this litigation.  Plaintiff offers

8  nothing to controvert this or otherwise establish Warden Pliler

9  somehow participated in the claimed violation of his

10 constitutional rights.

11     Based on the foregoing, the court hereby recommends

12 defendants' February 23, 2005, motion be granted and summary

13 judgment be entered for defendants Wai, Pliler and Kofoed.

14     Pursuant to the provisions of 28 U.S.C. § 636(b)(1), these

15 findings and recommendations are submitted to the United States

16 District Judge assigned to this case.  Written objections may be

17 filed within 20 days of service of these findings and

18 recommendations.  The document should be captioned "Objections to

19 Magistrate Judge's Findings and Recommendations."  The district

20 judge may accept, reject, or modify these findings and

21 recommendations in whole or in part.

22     Dated:  August 11, 2005.

23                          /s/ Peter A. Nowinski
                           PETER A. NOWINSKI
24                          Magistrate Judge

25

26